UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KIMBERLY COX, et al.,

    Plaintiffs,

v.

    Case No. 14-cv-13556

    HON. MARK A. GOLDSMITH

BLUE CROSS BLUE SHIELD OF MICHIGAN,

    Defendant.

_____/

**OPINION AND ORDER**
**GRANTING DEFENDANT'S MOTION TO DISMISS (Dkt. 17)**

**I. INTRODUCTION**

Plaintiffs Kimberly Cox and Heather Claus initiated this putative class action under the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq., alleging that Defendant Blue Cross Blue Shield of Michigan ("BCBSM") breached its fiduciary duty by charging Plaintiffs' respective ERISA plans "hidden" fees. BCBSM filed a motion to dismiss (Dkt. 17), claiming that Plaintiffs lack standing to bring this action. The issues have been fully briefed, and a hearing was held on May 7, 2015.[1] For the reasons explained fully below, the Court grants BCBSM's motion to dismiss.

**II. BACKGROUND**

During the period relevant to this action, BCBSM was a non-profit healthcare corporation organized under the laws of the State of Michigan. Third Am. Compl. ¶ 11 (Dkt. 13).[2] BCBSM

---

[1] Plaintiffs filed an ex parte motion for leave to file a sur-reply to BCBSM's motion to dismiss (Dkt. 23), which the Court grants.

[2] BCBSM is now a non-profit mutual company. See Def. Br. at 3 (Dkt. 17).

1

administered and processed claims for various ERISA welfare benefit plans, including self-insured (or "self-funded") health benefit plans. Id. ¶¶ 16, 19. In a self-funded plan, "the employer elects to pay the health care costs of its covered employees using its own funds, rather than paying premiums to an insurer in exchange for the insurer's assumption of the risk to pay the cost of employer-promised health care." Loren v. Blue Cross Blue Shield of Michigan, 505 F.3d 598, 601 (6th Cir. 2007); Third Am. Compl. ¶¶ 21, 25.

From at least February 1, 1994 to January 1, 2014, Genesys Regional Medical Center ("Genesys") provided its employees with healthcare coverage through a BCBSM-administered self-funded plan. Third Am. Compl. ¶ 8. Plaintiff Kimberly Cox has been an employee of Genesys since June 2005, and she was a participant and beneficiary of the Genesys plan from that time until January 1, 2014, on which date BCBSM ceased to administer the plan. Id. ¶¶ 7, 8, 16.

From at least October 1, 1996 to the present, Operating Engineers Local 324 ("Operating Engineers") provided its members with healthcare coverage through a BCBSM-administered self-funded plan. Id. ¶ 10. Plaintiff Heather Claus's husband was a member of Operating Engineers from 2000 until his death in June 2009. Id. ¶ 18. Plaintiff Claus was, and continues to be, a beneficiary of the Operating Engineers plan. Id. ¶¶ 9, 10, 18-20.

Plan sponsors for the Genesys plan and the Operating Engineers plan entered into Administrative Services Contracts ("ASCs") with BCBSM. Id. ¶ 21. Pursuant to these ASCs, BCBSM would act as a third-party administrator for the plans by paying covered employee healthcare claims, using money paid to BCBSM by plan sponsors and participants. Id. ¶¶ 22-25. In exchange for these services, BCBSM was entitled to administrative fees, in accordance with a "Schedule A," which contained "specific line items for administrative charges, and other specific

2

charges where applicable, and the specific dollar amount for each charge." Id. ¶¶ 26-27, 52. However, neither the ASCs nor the Schedule As "disclosed the dollar amount or the method of calculation for all of the fees BCBSM paid itself out of plan assets." Id. ¶ 29. The plan sponsors were required to make periodic administrative payments to BCBSM, which they did. Id. ¶¶ 34, 38.

Plaintiffs allege that, in 1993, BCBSM began secretly misappropriating funds under the ASCs and Schedule As. Id. ¶ 42. According to an internal memo, in order to appear to be a low-cost provider and compete with other third-party administrators that might underbid it, BCBSM would fraudulently misrepresent that it would take a smaller administrative fee than it would ultimately charge plans. Id. ¶ 44. BCBSM actually took a higher fee, disguising the overcharges as hospital-claims costs. Id. BCBSM would then keep the difference between the amounts it was actually paying for hospital claims and the amounts it reported it was paying for those claims. Id. Plaintiffs refer to the allegedly misappropriated plan assets as "hidden fees." Id. ¶ 46. BCBSM purportedly charged self-funded plans these hidden fees from 1993 through at least 2011. Id. ¶ 49.

On September 12, 2014, Plaintiffs filed this putative class action pursuant to 29 U.S.C. § 1132(a)(3), seeking injunctive and other equitable relief. Plaintiffs allege that BCBSM engaged in self-dealing and breached its fiduciary duties owed to participants and beneficiaries of self-funded health plans under ERISA. More specifically, Plaintiffs allege that BCBSM "maliciously exercised control over the health plans [and used] plan funds to pay itself fees that it failed to disclose to its principals." Id. ¶ 2. Plaintiffs also claim that BCBSM took affirmative steps to conceal its self-dealing and breaches of its fiduciary duty. Id. ¶¶ 3, 4. Plaintiffs seek to represent a class of all participants and beneficiaries of ERISA self-funded plans, as well as the

3

plans themselves, for which BCBSM was a third-party administrator, and in which BCBSM assessed "charges in excess of the amount of healthcare claims paid by BCBSM." Id. ¶ 82.

### III. ANALYSIS

BCBSM's motion to dismiss contends that Plaintiffs lack two types of standing that are relevant to this action: statutory standing and constitutional standing under Article III. To pursue their ERISA claims, Plaintiffs must possess both. Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 541 (1986).

Statutory standing concerns whether a plaintiff has a cause of action under a particular statute and is distinct from Article III standing. See Roberts v. Hamer, 655 F.3d 578, 580 (6th Cir. 2011) (citing Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 97 n.2 (1998)). To establish statutory standing, a plaintiff must show that his or her claim comes within § 502(a)(3) of ERISA, codified at 29 U.S.C. § 1132(a)(3), which authorizes a participant, beneficiary, or fiduciary to bring a civil action: "(A) to enjoin any act or practice which violates any provision of this subchapter or terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."

Constitutional standing is derived from Article III of the United States Constitution, which limits the jurisdiction of federal courts to justiciable cases and controversies. Hollingsworth v. Perry, 133 S. Ct. 2652, 2661 (2013) (citing U.S. Const. art. III, § 2); Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26, 37 (1976) ("No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies."). An essential feature of this requirement "is that any person invoking the power of a federal court must demonstrate standing to do so."

Hollingsworth, 133 S. Ct. at 2661; see also DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 342 (2006) ("The core component of the requirement that a litigant have standing to invoke the authority of a federal court is an essential and unchanging part of the case-or-controversy requirement of Article III."). The doctrine of standing ensures that a federal court's exercise of power is not "gratuitous" or "inconsistent" with the limitations imposed by Article III. See Simon, 426 U.S. at 38; Clinton v. City of New York, 524 U.S. 417, 429-430 (1998) (stating that standing "serves to identify those disputes which are appropriately resolved through the judicial process"). As the parties invoking federal jurisdiction, Plaintiffs bear the burden of establishing standing. Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992).

A plaintiff must satisfy three requirements to establish Article III standing. First, a plaintiff must have suffered an "injury in fact," defined as "an invasion of a legally protected interest" that is "concrete and particularized," i.e., "actual or imminent," as opposed to "conjectural or hypothetical." United States v. Windsor, 133 S. Ct. 2675, 2685 (2013). Second, a causal connection must exist between the injury and the conduct of which a plaintiff complains. Id. That is to say, "the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." Id. (brackets and ellipsis omitted). Third, it must be "likely," rather than "merely speculative, that the injury will be redressed by a favorable decision." Id.; accord Lujan, 504 U.S. at 560-561.

In this case, Plaintiffs seek "other appropriate equitable relief" in the form of restitution and disgorgement under § 1132(a)(3)(B), as well as injunctive relief under § 1132(a)(3)(A). For the reasons discussed below, the Court finds that Plaintiffs have failed to set forth in their complaint sufficient allegations to establish statutory standing to pursue equitable restitution or disgorgement; nor have they sufficiently alleged constitutional standing for an injunction.

**A. Statutory Standing for Restitution and Disgorgement Under § 1132(a)(3)(B)**

Plaintiffs are seeking restitution and disgorgement of the hidden fees that their plans paid to BCBSM. Third Am. Compl. at 25. Whether Plaintiffs' requested relief constitutes "other appropriate equitable relief" under § 1132(a)(3) ultimately turns on whether the remedies sought by Plaintiffs are truly equitable, and not legal.

To determine whether Plaintiffs' claim for restitution is a claim for <u>equitable</u> restitution, as opposed to <u>legal</u> restitution, the Court finds guidance in the Sixth Circuit's decision in <u>Central States, Southeast & Southwest Areas Health & Welfare Fund v. First Agency, Inc.</u>, 756 F.3d 954 (6th Cir. 2014). In that case, an employee benefit plan providing general health insurance to student athletes sued the students' sports-injury insurer for refusing to pay any portion of the athletes' medical expenses. After the district court found in favor of the plan, the Sixth Circuit addressed whether the monetary judgment in favor of the plan constituted equitable restitution or some form of legal relief – the latter being unavailable under § 1132(a)(3). Relying on the Supreme Court's decision in <u>Great-West Life & Annuity Insurance Co. v. Knudson</u>, 534 U.S. 204 (2002), the Sixth Circuit held that equitable restitution is awarded when a court "imposes a constructive trust or lien on particular funds or property in the defendant's possession but legal restitution when it holds the defendant liable for a sum of money." <u>Cent. States</u>, 756 F.3d at 960.

To illustrate the distinction between these two forms of restitution, the Sixth Circuit compared <u>Knudson</u> with <u>Sereboff v. Mid Atl. Med. Servs.</u>, 547 U.S. 356 (2006), each of which involved an ERISA plan seeking reimbursement of healthcare expenses from a car-accident beneficiary, who had recovered in tort against a third party. In <u>Sereboff</u>, an ERISA plan sought a constructive trust on settlement proceeds that "had been set aside and preserved in the beneficiary's accounts." <u>Cent. States</u>, 756 F.3d at 960. This restitution request was equitable

6

"because it sought its recovery through a constructive trust on a <u>specifically identified fund, not from the beneficiary's assets generally</u>." <u>Id.</u> (brackets and ellipsis omitted) (emphasis added). In <u>Knudson</u>, by contrast, the plan sought legal restitution "because it claimed an entitlement to some funds for benefits that it had conferred rather than particular funds that were in the beneficiary's possession." <u>Cent. States</u>, 756 F.3d at 960 (brackets and emphasis omitted). Based on this distinction, the Sixth Circuit found that the plaintiff in <u>Central States</u> sought legal restitution. The plan had not won a constructive trust or lien on any <u>identifiable fund</u>. Rather, the losing insurer's obligation could have been satisfied "by dipping into any pot [the insurer] chooses." <u>Id.</u>

The plan in <u>Central States</u> attempted to characterize its sought-after relief as equitable, claiming that "the requested funds are specifically identifiable because the funds are measured by the amount of the bills [the plan] paid." <u>Id.</u> Rejecting this argument, the Sixth Circuit emphatically stated that "[i]t is the <u>fund</u>, not its <u>size</u>, that must be identifiable." <u>Id.</u> (emphasis in original). Because the recovery would come out of the insurer's "assets in general, not out of any fund in particular[,]" the court found that the plan's restitution claim was legal, not equitable. <u>Id.</u> at 960-961.

The <u>Central States</u> decision is consistent with other Sixth Circuit authority holding that equitable restitution is only available where a plaintiff seeks recovery of a specifically identifiable fund. See, e.g., <u>Alexander v. Bosch Auto. Sys., Inc.</u>, 232 F. App'x 491, 500 (6th Cir. 2007) (holding, in an ERISA action by former employees, that an order for plant-closure benefits did not constitute equitable restitution, reasoning that "our task of determining whether we can award Plaintiffs with equitable restitution turns on whether Plaintiffs seek to recover particular property or particular and identifiable funds in [Defendant's] possession"), <u>cert. denied</u>, 554 U.S.

7

932 (2008). It is also consistent with general equitable principles applicable outside the ERISA context. See 1 Dan B. Dobbs, Law of Remedies § 4.3(2), at 589-590 (2d ed. 1993) ("The constructive trust might be imposed upon any identifiable kind of property or entitlement in the defendant's hands if, in equity and conscience, it belongs to the plaintiff.").

In the present case, Plaintiffs' third amended complaint seeks to impose a "constructive trust." See Third Am. Compl. ¶¶ 82, 109, 116. However, Plaintiffs fail to allege any specifically identifiable fund in BCBSM's possession over which a constructive trust or equitable lien could be imposed. Without such allegations, BCBSM is seeking a judgment that is indistinguishable from a money judgment. Cent. States, 756 F.3d at 960-961; see also Alexander, 232 F. App'x at 501 (holding that the plaintiffs could not be awarded "equitable restitution[,]" because "any restitutionary-type relief in this case would merely compel the payment of money from a general fund and constitute money damages"). Under the current complaint, any recovery of the money paid to BCBSM would appear to come from BCBSM's general assets. Because Plaintiffs have failed to sufficiently allege a specifically identifiable fund in BCBSM's possession, they have not set forth sufficient allegations to establish statutory standing for equitable restitution.

Plaintiffs' request for disgorgement requires dismissal for the same reason. During the hearing on the motion to dismiss, Plaintiffs clarified that they are not seeking the disgorgement of profits; rather, they are seeking the disgorgement of the hidden fees their respective plans paid to BCBSM. See 5/7/2015 Hr'g Tr. at 15 (Dkt. 34). No matter what label Plaintiffs choose to employ, their disgorgement claim ultimately seeks the same relief as their restitution claim – the recovery of an amount equal to the hidden fees. As such, Plaintiffs' failure to specifically identify a particular fund in BCBSM's possession undermines their disgorgement remedy. See McLemore v. Regions Bank, 682 F.3d 414, 426-427 (6th Cir. 2012) (affirming the district

8

court's dismissal of a disgorgement claim brought under § 1132(a)(3), where the district court found that there were no "specifically identifiable" funds in the defendant's possession).

Plaintiffs' attempt to cure this deficiency by fashioning a theory of standing in their briefing misses the mark. In their sur-reply, Plaintiffs contend that they "have identified specific funds that were siphoned off from the Plans by BCBSM" because "BCBSM took assets directly from the Plans and disguised the excess payments as 'hospital claims costs'" without actually paying the hospitals. Pls. Sur-Reply at 5-6 (Dkt. 23-1). However, the complaint contains no allegation that any particular fund is identifiable; the term is not used in the complaint at all. Nor are there any sufficiently detailed allegations made by Plaintiffs from which an inference can be fairly drawn that an identifiable fund exists. Nor is there a description of how payments were made by, or on behalf of, Plaintiffs, and how the alleged siphoning was accomplished by BCBSM, such that an identifiable fund exists.

Trying to cure this deficiency by offering allegations in briefing – as contrasted with what might be alleged in a complaint or in a proposed complaint – is not an acceptable way to oppose a motion to dismiss. See Britton v. Nationstar Mortg., LLC, No. 14-cv-14098, 2015 WL 164046, at *2 (E.D. Mich. Jan. 13, 2015) ("At the motion to dismiss stage, the Court's task is to analyze the sufficiency of the complaint as pleaded by the plaintiff, not the plaintiff's response brief." (emphasis in original)). Thus, the Court need not decide whether Plaintiffs' theory, as articulated in their briefing, is sufficient under Federal Rule of Civil Procedure 12(b)(6).

Plaintiffs also attempt to call into question whether Central States governs our case. They claim that it is distinguishable because the insurer against which recovery was sought in that case had never been in possession of any funds belonging to the plan; rather, the recovery was premised on the plan's payment of funds to third-parties for medical expenses that should

have been paid by the insurer. See Pls. Sur-Reply at 5 (citing Cent. States, 756 F.3d at 959). It is true that our case differs from Central States, in that Plaintiffs' claim here is premised on amounts they or their plans paid to BCBSM. However, the Central States opinion distinguished between equitable and legal restitution based solely on whether recovery would ultimately be secured from an identifiable fund. Cent. States, 756 F.3d at 960 (Because the plan could "satisfy [its] obligation by dipping into any pot it chooses . . . [t]hat means [the plan] sought legal rather than equitable restitution."). The Sixth Circuit's analysis was focused on what was identifiable at the time of recovery – not whether the party from whom restitution was sought had ever possessed funds of the restitution-claimant. Plaintiffs' effort to distinguish Central States on this basis lacks merit.[3]

Plaintiffs also attempt to evade Central States by pointing to the Sixth Circuit's decision in Helfrich v. PNC Bank, Kentucky, Inc., 267 F.3d 477 (6th Cir. 2001), which Plaintiffs claim stands for the proposition that "equitable restitution is available when a fiduciary uses a principal's money for its own account." Pls. Sur-Reply at 4. In fact, the Helfrich opinion does not hold that broadly. In that case, the district court dismissed an ERISA action in which a plan participant had alleged breach of fiduciary duty by the plan administrator, which had failed to follow the participant's instruction to transfer his 401-K assets into a higher performing fund. Agreeing with the district court that the claim was for money damages, rather than restitution, the Sixth Circuit stated that if the administrator had placed the funds in its own "separate" account, the participant could have invoked restitution to recover the principal. 267 F.3d at 481. However, the court went on to state that no restitution was available to the participant, because the principal had been restored to him. Id. ("[T]here is nothing to restore to [the participant], and

---

[3] Plaintiffs' similar effort to distinguish Knudson on the same basis, see Pls. Sur-Reply at 5, fails for the same reason.

therefore no basis for restitutionary relief." (emphasis in the original)). Thus, Helfrich is entirely consistent with Central States's insistence that there be "identifiable funds" at the time of recovery.

Plaintiffs mistakenly rely on the Sixth Circuit's decision in Loren v. Blue Cross Blue Shield of Michigan, 505 F.3d 598 (6th Cir. 2007), where healthcare-plan participants and beneficiaries alleged breaches of fiduciary duty against an insurer, based on the theory that the insurer negotiated better reimbursement rates for its affiliated health maintenance organization than it did for the plaintiffs' plans. In Loren, the Sixth Circuit acknowledged that plan participants or beneficiaries may bring suit in their individual capacities for a breach of fiduciary duty under § 1132(a)(3), provided they seek injunctive or other appropriate equitable relief, as opposed to money damages. 505 F.3d at 609. The Sixth Circuit went on to explain that, for purposes of the injury-in-fact requirement for constitutional standing, the plaintiffs did not have to "demonstrate individualized injury to proceed with their claims for injunctive relief under § 1132(a)(3); they may allege only violation of the fiduciary duty owed to them as a participant in and beneficiary of their respective ERISA plans." Id. at 610 (emphasis added). After finding that the plaintiffs had also satisfied the causation requirement for constitutional standing, the Loren court stated:

> Finally, because we have determined that Ford and Axle sponsor single ERISA plans, any restitution of ill-gotten gains and other equitable relief available under § 1132(a)(3) would be distributed to the single ERISA plans in which Plaintiffs participate. Accordingly, we conclude that Plaintiffs have Article III standing to sue under § 1132(a)(3) for breach of fiduciary duty.

Id. (emphasis added). Plaintiffs rely on these two sentences to argue that Loren establishes that restitution of any sort is deemed "other appropriate equitable relief" under ERISA. See Pls. Resp. at 16 (Dkt. 19).

Plaintiffs are mistaken for several reasons. First, <u>Loren</u> is distinguishable from the case at hand, as it dealt with <u>constitutional</u> standing — not statutory standing. As part of the constitutional-standing analysis, <u>Loren</u>'s enigmatic sentences concerning the "restitution of ill-gotten gains and other equitable relief available under § 1132(a)(3)" are properly viewed as a terse comment on constitutional standing's redressability factor, <u>i.e.</u>, that any available equitable relief would redress wrongs. These sentences do not purport to address statutory standing, nor the subsidiary question of what particular relief was available under ERISA. Second, the Sixth Circuit did not assign any specific meaning to the phrase "restitution of ill-gotten gains," nor did it purport to define the contours or limitations of the type of restitution sought in that particular case. In fact, the phrase appears to invoke disgorgement of "profits," which Plaintiffs concede they are not seeking in this action. Third, unlike in <u>Central States</u>, the court in <u>Loren</u> did not specifically address the distinction between equitable and legal restitution. In light of <u>Central States</u>' specific focus on that issue, <u>Loren</u> cannot be validly interpreted as contrary authority that this Court should follow.

Accordingly, the Court concludes that <u>Central States</u>, not <u>Loren</u>, controls the outcome of the present case, and Plaintiffs have failed to set forth sufficient allegations to establish statutory standing to pursue their requested relief under § 1132(a)(3)(B).

### B. Constitutional Standing for Injunctive Relief Under § 1132(a)(3)(A)

To establish constitutional standing to seek an injunction in federal court, a party must show "a non-speculative threat that he [or she] will again experience injury as a result of the alleged wrongdoing." <u>Werner v. Primax Recoveries, Inc.</u>, 365 F. App'x 664, 668 (6th Cir. 2010). As the Supreme Court has repeatedly acknowledged, "'past exposure to illegal conduct does not itself show a present case or controversy regarding injunctive relief if unaccompanied

12

by any continuing, present adverse effects.'" City of Los Angeles v. Lyons, 461 U.S. 95, 102 (1983) (quoting O'Shea v. Littleton, 414 U.S. 488, 495-496 (1974)) (brackets and ellipsis omitted); accord Fieger v. Mich. Supreme Court, 553 F.3d 955, 966 (6th Cir. 2009). Moreover, "while past illegal conduct might constitute evidence regarding whether there is a real and immediate threat of repeated injury, where the threat of repeated injury is speculative or tenuous, there is no standing to seek injunctive relief." Taylor v. Mich. Dep't of Natural Res., 502 F.3d 452, 464-465 (6th Cir. 2007) (ellipsis omitted).

During the hearing, Plaintiffs acknowledged that the only injunctive relief sought in this case would pertain to the enforcement of a favorable judgment, thereby ensuring the recovery of monies the plans paid to BCBSM as a result of the alleged misappropriation. See 5/7/2015 Hr'g Tr. at 35-36. At this point in time, there is no judgment for this Court to enforce, and any threat that BCBSM would not comply with such an order is purely speculative. Further, there is no real and immediate threat that BCBSM will repeat the misconduct alleged in the third amended complaint.[4] Therefore, the Court concludes that Plaintiffs' complaint lacks sufficient allegations establishing constitutional standing to pursue their requested injunctive relief under § 1132(a)(3).[5]

## IV. CONCLUSION

---

[4] There is no disagreement between the parties that BCBSM is no longer the third-party administrator of the Genesys plan, and Plaintiffs conceded during the hearing that BCBSM is not currently engaged in charging the Operating Engineers plan with the same allegedly hidden fees. See 5/7/2015 Hr'g Tr. at 36.

[5] BCBSM also argues that Plaintiff Cox lacks both constitutional and statutory standing, because she is no longer a participant or beneficiary in the Genesys plan. Def. Br. at 15-16. Because the Court concludes that Plaintiffs have made insufficient allegations of standing on other grounds, the Court declines to address this argument.

For the reasons stated above, the Court grants Defendant BCBSM's motion to dismiss (Dkt. 17). Although Plaintiffs have not filed a motion for leave to file an amended complaint, the Court will afford Plaintiffs the opportunity to file such a motion on or before October 1, 2015.[6] Because Plaintiffs' intentions regarding an amendment are unknown, this case is presently dismissed without prejudice and closed. Should Plaintiffs fail to timely file a motion to amend or other appropriate motion, this case will be deemed dismissed with prejudice. Should Plaintiffs file a motion to amend or other appropriate motion, this case will be reopened for further proceedings.

SO ORDERED.

Date:  September 10, 2015                    s/Mark A. Goldsmith
       Detroit, Michigan                     MARK A. GOLDSMITH
                                             United States District Judge

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 10, 2015.

                                             s/Carrie Haddon
                                             Case Manager

---

[6] In their response brief, Plaintiffs requested "leave to amend [the complaint] to replead a [§] 502(a)(2) claim, so all issues may be addressed on appeal," because they "believe the Loren decision with respect to § 502(a)(2) was wrongly decided." Pls. Resp. at 13 n. 3. However, the Court need not address this request, as a request for leave to amend within a responsive brief is not sufficient to properly place the issue of amendment before a district court. Begala v. PNC Bank, Ohio, Nat'l Ass'n, 214 F.3d 776, 784 (6th Cir. 2000) ("What plaintiffs may have stated, almost as an aside, to the district court in a memorandum in opposition to the defendant's motion to dismiss is . . . not a motion to amend").