UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KIMBERLY COX, et al.,

        Plaintiffs,

                                      Case No. 14-cv-13556

v.

                                      HON. MARK A. GOLDSMITH

BLUE CROSS BLUE SHIELD OF
MICHIGAN,

        Defendant.

_____/

## OPINION AND ORDER
## GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' FOURTH AMENDED COMPLAINT (Dkt. 68) AND DISMISSING CASE WITH PREJUDICE

Plaintiffs Kimberly Cox and Heather Claus initiated this putative class action under the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq., alleging that Defendant Blue Cross Blue Shield of Michigan ("BCBSM") breached its fiduciary duty as a third-party administrator by charging Plaintiffs' respective ERISA healthcare plans "hidden" fees. BCBSM filed a motion to dismiss Plaintiffs' fourth amended complaint (Dkt. 68), claiming that Plaintiffs lack standing to bring this action. The issues have been fully briefed. Because oral argument will not aid the decisional process, the motion will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2). As discussed below, the Court grants the motion and dismisses this case with prejudice.

## I. BACKGROUND

The Court addressed the factual and procedural background of this case in an opinion and order granting BCBSM's prior motion to dismiss Plaintiffs' third amended complaint. See Cox v. Blue Cross Blue Shield of Mich., 166 F. Supp. 3d 891, 893-894 (E.D. Mich. 2015). To avoid

1

needless repetition, the Court sets forth a brief statement of the necessary facts to provide context for this opinion.

From June 2005 to December 2013, Cox was a participant and beneficiary of a BCBSM-administered plan provided by her employer, Genesys Regional Medical Center (the "Genesys plan"). 4th Am. Compl. ¶¶ 11-12, 22 (Dkt. 65). From October 1996 to present, Claus has been a beneficiary of a BCBSM-administered plan through her late husband's membership in Operating Engineers Local 324 (the "Operating Engineers plan"). Id. ¶¶ 13-14, 25. Plan sponsors for the Genesys plan and the Operating Engineers plan entered into Administrative Services Contracts ("ASCs") with BCBSM, which "set forth the rights and responsibilities of each party with regard to BCBSM's administration of the Plans." Id. ¶ 1.

Plaintiffs allege that BCBSM engaged in self-dealing and breached its fiduciary duties by illegally paying itself additional administrative fees, which Plaintiffs refer to as "hidden" fees, and failing to disclose the misappropriated funds to its principals, contrary to the ASCs and in violation of ERISA. Id. ¶¶ 3, 4. On September 12, 2014, Plaintiffs filed this putative class action pursuant to 29 U.S.C. § 1132(a)(3).[1] Plaintiffs seek both injunctive relief under § 1132(a)(3)(A) and "other appropriate equitable relief" under § 1132(a)(3)(B) in the form of restitution, disgorgement, surcharge, and the imposition of a constructive trust or equitable lien. 4th Am. Compl. at 37-39 (prayer for relief).[2]

_____

[1] Title 29 U.S.C. § 1132(a)(3) provides that "[a] civil action may be brought by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter of the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."

[2] In Loren v. Blue Cross Blue Shield of Michigan, the Sixth Circuit acknowledged that plan participants or beneficiaries may bring suit in their individual capacities for a breach of fiduciary duty under § 1132(a)(3), provided they seek injunctive or "other appropriate equitable relief," as

In its opinion granting BCBSM's motion to dismiss the third amended complaint, the Court concluded that Plaintiffs failed to set forth sufficient allegations in their third amended complaint to establish statutory standing to pursue their requested equitable relief under § 1132(a)(3)(B).  Cox, 166 F. Supp. 3d at 899.  The Court also held that the complaint lacked sufficient allegations to establish constitutional standing to pursue Plaintiffs' requested injunctive relief under § 1132(a)(3)(A).  Id.  While dismissing the third amended complaint, the Court granted Plaintiffs leave to file a motion to amend their complaint, see id. at 900, which they did, see Pls. Mot. for Leave (Dkt. 59).  After the Court granted the motion to amend in part, see 4/28/2016 Order (Dkt. 64), Plaintiffs filed their fourth amended complaint, see 4th Am. Compl. (Dkt. 65), which was followed by BCBSM's present motion to dismiss.

## II. ANALYSIS

To pursue their ERISA claims, Plaintiffs must possess both constitutional and statutory standing.  Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 541 (1986).  BCBSM's motion to dismiss contends that Plaintiffs still lack both types of standing.  Because the Court agrees with BCBSM that Plaintiffs lack constitutional standing to bring this action, it will not address whether Plaintiffs possess statutory standing.

The requirement for constitutional standing is derived from Article III of the United States Constitution, which limits the jurisdiction of federal courts to justiciable cases and controversies.  Hollingsworth v. Perry, 133 S. Ct. 2652, 2661 (2013) (citing U.S. Const. art. III, § 2); Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26, 37 (1976) ("No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional

---

opposed to money damages.  505 F.3d 598, 609 (6th Cir. 2007).  Because Plaintiffs have brought this action in their individual capacities based on BCBSM's alleged breach of fiduciary duty, Plaintiffs cannot maintain an action for money damages, and their relief is limited to injunctive or other appropriate equitable relief.

limitation of federal-court jurisdiction to actual cases or controversies.").  An essential feature of this requirement "is that any person invoking the power of a federal court must demonstrate standing to do so."  Hollingsworth, 133 S. Ct. at 2661; see also DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 342 (2006) ("The core component of the requirement that a litigant have standing to invoke the authority of a federal court is an essential and unchanging part of the case-or-controversy requirement of Article III.").  The doctrine of standing ensures that a federal court's exercise of power is not "gratuitous" or "inconsistent" with the limitations imposed by Article III.  See Simon, 426 U.S. at 38; Clinton v. City of New York, 524 U.S. 417, 429-430 (1998) (stating that standing "serves to identify those disputes which are appropriately resolved through the judicial process").  As the parties invoking federal jurisdiction, Plaintiffs bear the burden of establishing standing.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992).

A plaintiff must satisfy three requirements to establish Article III standing:  "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016).  As this case is at the pleading stage, Plaintiffs "must clearly allege facts demonstrating each element."  Id.

A party seeking an injunction in federal court must satisfy a fourth requirement to have constitutional standing — the party must generally show "a non-speculative threat that he [or she] will again experience injury as a result of the alleged wrongdoing."  Werner v. Primax Recoveries, Inc., 365 F. App'x 664, 668 (6th Cir. 2010); see also City of Los Angeles v. Lyons, 461 U.S. 95, 102 (1983) (the plaintiff must show a "real and immediate threat of repeated injury" demonstrated by more than "past exposure to illegal conduct"); O'Shea v. Littleton, 414 U.S. 488, 495-496 (1974) (explaining that "[p]ast exposure to illegal conduct does not in itself show a

present case or controversy regarding injunctive relief"). Moreover, "while past illegal conduct might constitute evidence regarding whether there is a real and immediate threat of repeated injury, where the threat of repeated injury is speculative or tenuous, there is no standing to seek injunctive relief." Taylor v. Mich. Dep't of Natural Res., 502 F.3d 452, 464-465 (6th Cir. 2007); Grendell v. Ohio Supreme Court, 252 F.3d 828, 833 (6th Cir. 2001) (same).

There is some relaxation of standing requirements in the ERISA context. An ERISA plan participant or beneficiary seeking injunctive relief under § 1132(a)(3)(A) need not demonstrate his or her own individual harm as part of establishing an injury in fact. Loren, 505 F.3d at 609-610. By contrast, a plan participant or beneficiary seeking "other appropriate equitable relief" under § 1132(a)(3)(B) is still obliged to do so. See, e.g., Perelman v. Perelman, 793 F.3d 368, 373 (3d Cir. 2015) ("Claims demanding a monetary equitable remedy . . . require the plaintiff to allege an individualized financial harm traceable to the defendant's alleged ERISA violations."); Faber v. Metro. Life Ins. Co., 648 F.3d 98, 102 (2d Cir. 2011) (disgorgement requires showing of individual harm); Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C., 433 F.3d 181, 199-200 (2d Cir. 2005) ("Obtaining restitution or disgorgement under ERISA requires that a plaintiff satisfy the strictures of constitutional standing by demonstrating individual loss."); Horvath v. Keystone Health Plan E., Inc., 333 F.3d 450, 456 (3d Cir. 2003) ("[R]estitution and disgorgement . . . are individual in nature and therefore require [the plaintiff] to demonstrate individual loss."). And an ERISA plan participant or beneficiary seeking an injunction must still establish that the threat of repeated illegality is non-speculative in nature. Werner, 365 F. App'x at 668.

As explained below, Plaintiffs cannot meet the injury-in-fact requirement for the non-injunctive equitable relief they seek, because they do not allege individual harm; they have also

failed to allege any likelihood of repeated injury or future harm, a prerequisite for the injunctive relief they seek.

   **A.  Plaintiffs Lack Constitutional Standing to Pursue "Other Appropriate Equitable Relief" under 29 U.S.C. § 1132(a)(3)(B)**

BCBSM argues that Plaintiffs lack constitutional standing to pursue claims for "other appropriate equitable relief" under 29 U.S.C. § 1132(a)(3)(B) — claims for restitution, disgorgement, surcharge, and the imposition of a constructive trust or equitable lien — because they have failed to sufficiently allege that they suffered an injury in fact.  See generally Def. Br. at 9-13.  Specifically, BCBSM contends that Plaintiffs' fourth amended complaint does not contain any allegations "that they themselves suffered any concrete injury as a result of the allegedly wrongful conduct in this case."  Id. at 13.  BCBSM claims Plaintiffs "were or currently are participants and beneficiaries of their respective plans and that during certain periods of time, they paid plan contributions."  Id. (citing 4th Am. Compl. ¶¶ 12, 13, 22, 23).  However, according to BCBSM, "[t]he only 'harm' [Plaintiffs] have alleged is that their plans paid more to BCBSM in fees than what the plans should have paid."  Id. (citing 4th Am. Compl. ¶¶ 126, 133).

   Plaintiffs do not squarely address BCBSM's argument on this point.  Rather, they make passing references to the injury-in-fact requirement in their response brief.  In the "Facts" section of the brief, Plaintiffs state that the fourth amended complaint "explains that BCBSM caused Plaintiffs' ERISA-governed healthcare plans to pay 'excessive and undisclosed' fees that they never agreed to pay."  Pls. Br. at 2-3 (citing 4th Am. Compl. ¶ 105).  Plaintiffs then claim that "BCBSM took these funds from money it was contractually required to keep in accounts held exclusively for Plaintiffs' and other insureds' healthcare costs, thereby injuring Plaintiffs."  Id. (citing 4th Am. Compl. ¶¶ 45, 46).  Further, in a footnote regarding whether they have standing to seek equitable relief under ERISA, Plaintiffs assert, without any supporting and explanatory

6

facts, that they "suffered concrete injuries when BCBSM withheld the Hidden Fees from their medical plans, and injunctive relief forcing return of such funds would redound to their benefit." Id. at 8 n.4.  The Court finds that these fleeting and conclusory assertions do not constitute sufficient factual allegations that Plaintiffs have suffered an injury in fact.

An injury in fact for purposes of Article III standing is defined as "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." Spokeo, 136 S. Ct. at 1548.  The particularization component is necessary to establish an injury in fact and requires that the plaintiff be affected "in a personal and individual way." Id. (collecting cases) (emphasis added).  The injury must also be concrete, i.e. "de facto," meaning that it actually exists. Id.

Here, the fourth amended complaint does not clearly allege facts that Plaintiffs suffered any particularized and concrete injuries as a result of BCBSM's alleged charging of hidden fees, such that they were affected "in a personal and individual way." Id.  For instance, there are no allegations that the amount of Plaintiffs' contributions to their plans were affected in any way by the hidden fees, that Plaintiffs themselves paid the fees to BCBSM, that Plaintiffs were denied or received fewer benefits because of the fees, or that the plans passed on to Plaintiffs any increase in the fees. See Loren, 505 F.3d at 608-609 (holding that the plaintiff's allegation "that he made 'contributions' to [his healthcare plan] and that the level of his contributions 'probably would have been less had BCBSM not [charged the hidden fees]' set forth in the Complaint" was "neither concrete nor particularized, and [was] instead, arguably conjectural and hypothetical").

At most, it is Plaintiffs' healthcare plans that suffered concrete and particularized injuries when they paid BCBSM the hidden fees. See Pls. Br. at 2-3 ("BCBSM caused Plaintiffs' ERISA-governed healthcare plans to pay 'excessive and undisclosed' fees that they never agreed

to pay." (emphasis added)); see also 4th Am. Compl. ¶ 126 ("BCBSM's breaches of fiduciary duties have harmed Plaintiffs and the members of the Class by causing the plans to pay more in fees than what BCBSM should have been paid pursuant to the ASCs and Schedule As[.]" (emphasis added)).  This is not concrete or particularized harm to Plaintiffs.  And even if returning funds to the plans might, in some unspecified way, benefit Plaintiffs, that would not establish that Plaintiffs had been harmed by BCBSM — any more than a windfall establishes a preceding injury, even though  the windfall would surely benefit the recipient.

Because Plaintiffs have failed to allege that they suffered any particularized or concrete injury, Plaintiffs lack constitutional standing to pursue their claims for "other appropriate equitable relief" under § 1132(a)(3)(B).

## B. Plaintiffs Lack Constitutional Standing to Pursue Injunctive Relief under 29 U.S.C. § 1132(a)(3)(A)

In its opinion granting BCBSM's motion to dismiss the third amended complaint, this Court held that "there [was] no real and immediate threat that BCBSM [would] repeat the misconduct alleged in the third amended complaint," because BCBSM was no longer the third-party administrator of the Genesys plan, and because counsel for Plaintiffs conceded during the motion hearing that BCBSM was not engaged in charging the plans with the same allegedly hidden fees at that time.  Cox, 166 F. Supp. 3d at 899 & n.4; see also 5/7/2015 Hr'g Tr. at 35-36 (Dkt. 34) (counsel for Plaintiffs stating that the requested injunctive relief would be have nothing to do with future conduct by BCBSM "because [BCBSM has] ceased this conduct as of some years ago").

Invoking this earlier ruling, BCBSM argues that the fourth amended complaint does not contain any new allegations that would support a real and immediate threat that BCBSM would repeat its alleged practice of charging hidden fees.  Def. Br. at 8-9.  A review of the fourth

amended complaint confirms that Plaintiffs make no allegations of future harm.  The only references to harm are references to past harm.  <u>See</u> 4th Am. Compl. ¶ 126 ("BCBSM's breaches of fiduciary duties have harmed Plaintiffs and the members of the Class by causing the plans to pay more in fees than what BCBSM should have been paid[.]"); <u>see also id.</u> at ¶ 133 ("BCBSM's violations of 29 U.S.C. § 1106(b)(1) have harmed Plaintiffs and the members of the Class by causing their plans to pay more in fees than what BCBSM was entitled to[.]").  The failure to make allegations of future harm is fatal to Plaintiffs' request for injunctive relief.

Plaintiffs do not respond to BCBSM's argument in the section of their brief pertaining to legal argument and analysis.  There is a section in the "Facts" portion of their brief that claims BCBSM's "wrongful conduct continues."  Pls. Br. at 4.  Plaintiffs concede that BCBSM "some years ago" stopped "stealing money."  <u>Id.</u>  But they claim that "unlawful conduct continues" by virtue of BCBSM's failure to keep the funds in special accounts, as required under plan documents, and its exercise of exclusive control over those funds.  <u>Id.</u> at 4-5.

Putting aside Plaintiffs' failure to raise this unsubstantiated point in the argument section of their brief, Plaintiffs' principal error is that the harm alleged in the fourth amended complaint solely concerns the plans paying more in fees than what BCBSM should have been paid.  <u>See</u> 4th Am. Compl. ¶¶ 126, 133.  The removal of the funds from the special accounts created no additional harm; and any possible harm that the removal created was accomplished at the time of removal "some years ago" when the alleged stealing stopped.  There has been no harm since then that has been plausibly alleged.

Without an allegation regarding the threat of repeated injury or future harm, constitutional standing to seek an injunction is not made out.  <u>E.g.</u>, <u>Hange v. City of Mansfield, Ohio</u>, 257 F. App'x 887, 891 (6th Cir. 2007) ("[T]he Supreme Court has held that a plaintiff's

standing to seek injunctive or declaratory relief depends on the likelihood of future harm."); id. ("Absent a sufficient likelihood that he will again be wronged in a similar way, a plaintiff is not entitled to injunctive relief."); Cohn v. Brown, 161 F. App'x 450, 455 (6th Cir. 2005) (holding that the plaintiff's "allegation of past injury [was] not sufficient to confer standing for declaratory or injunctive relief"); Facio v. Jones, 929 F.2d 541, 544 (10th Cir. 1991) (finding that a plaintiff who has been injured can bring an action to recover damages, but that same plaintiff cannot maintain a declaratory or injunctive action without demonstrating "a good chance of being likewise injured in the future"). See also Erwin Chemerinsky, Federal Jurisdiction § 2.3 at 68 (5th ed. 2007) ("Since Lyons, the Supreme Court has reaffirmed that a plaintiff seeking injunctive or declaratory relief must show a likelihood of future injury.").

Therefore, the Court concludes that Plaintiffs have not cured the defects in their pleading and fail to allege sufficiently constitutional standing to pursue their claims for injunctive relief under § 1132(a)(3)(A).

## III. CONCLUSION

For the reasons stated above, the Court grants BCBSM's motion to dismiss the fourth amended complaint (Dkt. 68). Plaintiffs have amended their complaint on four occasions (Dkts. 5, 12, 13, 65), and they do not seek to amend it a fifth time. This omission and Plaintiffs' past and continuing inability to make their case despite a fair opportunity to do so lead the Court to exercise its discretion to dismiss this case with prejudice. See Ohio Police & Fire Pension Fund v. Standard & Poor's Fin. Servs. LLC, 700 F.3d 829, 844 (6th Cir. 2012) (the default rule in the Sixth Circuit is that, "if a party does not file a motion to amend or a proposed amended complaint in the district court, it is not an abuse of discretion for the district court to dismiss the claims with prejudice."); Spadafore v. Gardner, 330 F.3d 849, 853 (6th Cir.2003) (rejecting

plaintiffs' claim that they were wrongfully denied an opportunity to further amend the complaint to correct deficiencies where no motion for leave to amend was ever filed, nor was a proposed amendment submitted in any form, as required by Rule 15(a)); see also Schiller v. Physicians Resource Grp. Inc., 342 F.3d 563, 567 (5th Cir. 2003) (holding that the district court did not abuse its discretion in dismissing the plaintiff's third amended complaint with prejudice, where the plaintiff did not seek leave to amend the complaint and it "had a fair opportunity to present its case, but failed to do so."); Malsom v. Match.com, L.L.C., 540 F. App'x 412, 416 (5th Cir. 2013) ("[A]t some point, a court must decide that a plaintiff has had fair opportunity to make his case; if, after that time, a cause of action has not been established, the court should finally dismiss the suit.").[3]

SO ORDERED.

Dated:  October 28, 2016                                s/Mark A. Goldsmith
          Detroit, Michigan                          MARK A. GOLDSMITH
                                                     United States District Judge


**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on October 28, 2016.

                                                     s/Karri Sandusky
                                                     Case Manager

---

[3] While this action is dismissed, both the Genesys plan and the Operating Engineers plan, which allegedly paid the hidden fees, are not without recourse.  Nor is BCBSM forever shielded from liability for its alleged wrongful conduct in this case due to the dismissal.  Approximately 229 cases have been filed in this District by plans and plan sponsors against BCBSM, and over a dozen self-funded healthcare plans are currently represented in pending litigation — an option the Genesys and Operating Engineers plans may consider pursuing as well.  Recovery may also come by way of the plan-initiated putative class action currently pending in this District, which also involves matters arising out of BCBSM allegedly charging ERISA plans hidden fees.  See Wolverine Metal Stamping Inc. v. Blue Cross Blue Shield of Mich., No. 15-cv-12410 (E.D. Mich.) (Michelson, J.).